IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LISA GRENNAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00645-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Lisa Grennan seeks judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings.

**I.    STATEMENT OF THE CASE**

Grennan seeks disability benefits under Titles II and XVI of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 16-1 at Tr. 11. She applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on February 28, 2019. *Id.* Her applications reported disability due to ten conditions: sciatica, degenerative disc disease, rectal cystocele, interstitial cystitis, post-traumatic stress disorder ("PTSD"), fibromyalgia, peripheral neuropathy, asthma, chronic fatigue, and a "cerebrovascular accident." *Id.* at 221. The Commissioner denied Grennan's applications initially and upon reconsideration (*id.* at 107, 123), so she requested a hearing before

an administrative law judge ("ALJ"). *Id.* at 144-45. ALJ Marjorie Panter conducted the hearing (*id.* at 11) and affirmed the Commissioner's decision. *Id.* at 11-25.

The ALJ conducted the sequential evaluation, finding at step one that Grennan "has not engaged in substantial gainful activity since September 17, 2018, the alleged onset date." *Id.* at 14. At step two, she found Grennan "has the following severe impairments: fibromyalgia; arthritis; degenerative disc disease (DDD) of lumbar and cervical spine with spondylosis; and depression." *Id.* At step three, she determined Grennan's impairments do not meet those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 15. Before proceeding to step four, the ALJ assessed Grennan's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb. She can frequently reach overhead bilaterally with her upper extremities, [and] frequently handle and finger bilaterally. She can understand, remember, and carry out detailed but not complex instructions and can have frequent contact and interaction with supervisors, coworkers, and the public.

*Id.* at 19. Based on the RFC, the ALJ found at step four that Grennan can perform PRW as a waitress or bartender. *Id.* at 24. Because she concluded Grennan could perform PRW despite her impairments, the ALJ found her not disabled after step four. *Id.* at 24-25.

After the Social Security Appeals Council denied further administrative review (*id.* at 1), Grennan filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). She challenges the Commissioner's decision on constitutional grounds and on the merits. First, she asserts the Social Security Administration's leadership structure violates the Constitution's requirement of separation of powers and contends this unconstitutionality invalidates her claim's denial. *See* ECF No. 20 at 14-16. Second, she argues the ALJ did not apply proper legal standards and did not reach a conclusion substantial evidence supports. *Id.* at 5-14.

## II.     STANDARD OF REVIEW

Titles II and XVI of the SSA, 42 U.S.C. §§ 401-434; 1381-1383f, govern the DIB and SSI benefits programs. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any

3

other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**III.    ANALYSIS**

    **A.    The Court should decline to address Grennan's constitutional challenge.**

Courts typically constrain their review of social security proceedings to determining whether the Commissioner applied correct legal standards and if substantial evidence supports the Commissioner's conclusion. *See Leggett*, 67 F.3d at 564. But here the parties devoted substantial briefing to a threshold constitutional question. Grennan analogizes the Administration's prior leadership structure, headed by a commissioner only removable for cause who had a tenure longer than the President's, to the leadership structure of the Consumer Financial Protection Bureau, which the Supreme Court invalidated in *Seila Law LLC v. CFPB*, ___ U.S. ___, 140 S. Ct. 2183, (2020). *See* ECF No. 20 at 14-17. Grennan is correct that the law formerly limited the President's power to remove a commissioner duly confirmed by the Senate. 42 U.S.C. § 902(a)(3). The Commissioner does not dispute § 902(a)(3)'s unconstitutionality. ECF No. 21 at 7; *see also* Office of Legal Counsel, U.S. Dep't of Just., Constitutionality of the Comm. of Soc. Sec. Tenure Protection, 2021 WL 2981542, at 1 (July 8, 2021) ("The conclusion that the removal restriction is constitutionally unenforceable does not affect the validity of the remainder of the statute."). The parties only dispute whether its unconstitutionality warrants reversal of the ALJ's decision and remand of Grennan's case for further administrative review under the departmental leadership of a commissioner whom the President can dismiss at will. *See* ECF Nos. 21 at 7-18; 22 at 2-9.

Because the Court can resolve Grennan's appeal by applying the familiar "substantial evidence/correct legal standards" analysis, it need not resolve the parties' constitutional dispute. In avoiding that issue, the Court follows established precedent holding that federal courts should typically forgo deciding cases on constitutional grounds when they can be resolved on other bases. *See Siler v. Louisville & N.R. Co.*, 213 U.S. 175, 193 (1909) ("Where a case in this court can be

decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons."); *see also Leggett*, 67 F.3d at 564 (noting that when possible a court should render its decision in social security proceedings based on the twin inquiries of correct legal standards and substantial evidence).

### B.     The Court should reverse the ALJ's decision.

Beyond her constitutional claim, Grennan urges reversal based on two alleged errors by the ALJ. First, she argues the ALJ erred in assessing her mental RFC by improperly handling opinion evidence from the State's psychological examiner, Alvin Smith, PhD. *See* ECF No. 20 at 6. Second, she argues the ALJ erred at step two because her "finding that Plaintiff's bladder problems cause no work limitations is contrary to law and not supported by substantial evidence." *Id.* at 3. Only her second argument warrants reversal.

#### 1.     The ALJ applied correct legal standards to Dr. Smith's opinion.

Grennan attacks the ALJ's evaluation of Dr. Smith's opinion in two respects: (1) "The ALJ improperly failed to include all the limitations set forth in the administrative findings in her RFC and did not explain why"; and (2) the ALJ found Smith's opinion "unqualifiedly persuasive." *Id.* The ALJ did not err on either point.

##### a.     The ALJ was not required to incorporate each limitation from Dr. Smith's opinion verbatim.

The Commissioner's decision denying benefits "shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). However, no formalistic rules govern how ALJs must articulate a decision, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), so long as they provide enough reasons to permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3

(N.D. Tex. Aug. 28, 2009) (citation omitted), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). Grennan says the ALJ failed to do so because she did not "include all the limitations described [in Dr. Smith's opinion] in her RFC, or explain why they were excluded." *Id.* at 5. While Grennan distinguished at length between "qualitative limitations" and "quantitative limitations" in an RFC, the crux of her argument is that Dr. Smith opined Grennan could adjust to changes in her work environment "where contact with supervisors and co-workers is incidental to the work performed," Tr. 104, 120, while the RFC stated she "can have frequent contact and interaction with supervisors, coworkers, and the public." Tr. 19.

Grennan likens this difference to other cases where ALJs failed to implement a "superficial interaction" limitation and states that, as in those cases, the ALJ here "replaced a quality limitation for one describing quantity, without explanation." ECF No. 20 at 8. Citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1997), Grennan argues this omission warrants reversal and remand because the ALJ has an "absolute obligation" to explain her findings in a way that permits meaningful judicial review. ECF No. 20 at 6. Grennan asserts the ALJ fell short of this absolute obligation by not explicitly articulating reasons for omitting that limitation. *Id.* As she frames the rule, ALJs must "accept and include or reject and explain." *Id.* While she states this is the "longstanding law of this Circuit," citations to legal authorities explicitly stating this rule are conspicuously missing from her brief. *See id.* The dearth of legal authorities supportive of Grennan's position is unsurprising, as it represents the kind of "formalistic rule" the Fifth Circuit routinely rejects. *See Falco*, 27 F.3d at 164.

In support of her heightened explanation requirement, Grennan emphasizes SSR 85-16, which exists "[t]o state the policy and describe the issues to be considered when an individual with a mental impairment requires an assessment of the [RFC] in order to determine the individual's

capacity to engage in basic work-related activities." SSR 85-16 (PPS-120), 1985 WL 56855, at *1 (S. S. A. Nov. 30, 1984). But contrary to Grennan's insistence, the Fifth Circuit has repeatedly rejected arguments seeking to impose formulaic requirements on ALJs explaining their RFC findings. *See Audler*, 501 F.3d at 448 (noting ALJs are not required to provide an exhaustive point-by-point discussion of the evidence they consider). Grennan's reliance on SSR 85-16 is understandable yet misplaced. The Administration's internal rulings like SSR 85-16 are not binding precedent, "but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). Here, however, the law regarding an ALJ's required explanation is clear: word-for-word recitations are not required so long as the explanation permits meaningful judicial review. *See* 20 C.F.R. § 404.1520c; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations she finds "consistent with the weight of the evidence as a whole").

The law only requires an "accurate and logical bridge" within the ALJ's RFC explanation. *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). The ALJ's explanation here provides such an "accurate and logical bridge" between the evidence considered and the conclusions reached, Dr. Smith's singular "incidental work" limitation notwithstanding. *See* Tr. at 19-25. And even if Grennan were correct and the law required the ALJ to "accept and include or reject and explain" the limitation, any resulting error would be harmless. It would not be harmless in the sense that an RFC without an applicable limitation is valid (it is not). Rather, it would be harmless in the sense that the ALJ's explanation provides an "accurate and logical bridge" between the evidence and the RFC conclusion, and substantial evidence supports the RFC as formulated without the incidental work limitation. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013) (noting ALJs are free to only incorporate limitations consistent with the rest of the evidentiary record).

Accordingly, Grennan's arguments concerning the ALJ's incorporation of that limitation are unpersuasive.

### b. The ALJ explained why Dr. Smith's opinion was persuasive.

The ALJ found Dr. Smith's opinion persuasive because it was "consistent with" and "supported by" the evidentiary record. Tr. 23; *see also* 20 C.F.R. § 404.1520c(b)(2) (requiring ALJs to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions"). But Grennan asserts error because "the ALJ did not place any qualification on her finding that the administrative findings [of Dr. Smith] were persuasive." *See* ECF No. 20 at 7. Under the revised guidelines, ALJs need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." § 404.1520c(a). Rather, they enjoy discretion to find all or part of some opinions persuasive and all or part of other opinions unpersuasive, *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987), so long as they do not make this determination "arbitrarily." *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980). The Court will not second-guess the ALJ's choices so long as the ALJ explains herself sufficiently and substantial evidence supports the conclusion reached. *Id.*; *see* 20 C.F.R. § 404.1520c.

The ALJ sufficiently assessed Dr. Smith's opinion's supportability and consistency when explaining why she found it persuasive:

> In October 2019, state agency consultant Alvin Smith [] opined that the claimant had moderate limits in her ability to interact and concentrate, persist, and maintain pace. He opined the claimant retained the capacity to understand, remember, and carry out detailed, non-complex instructions, attend and concentrate for extended periods with tasks at the above level, apply reasonable judgment with work-related activities, and adjust to changes in the work routine in a setting where contact with supervisors and coworkers is incidental to the work performed (Exs. 5A/7-8, 13; 7A/7, 13). These findings are supported by and consistent with the medical evidence of record, which supports the claimant having abnormal behaviors in her ability to interact with others and concentrate, which is supported by exam findings

of agitation, hyper-verbal behavior, and ongoing effects from her depression (Exs. 3F/40; 7F/51-52). Medical records also support the claimant having no more than mild limits in the other domains, supporting the functional limits identified in the [RFC] (Exs. 3F/26, 40; 4F/12; 5F/196; 7F/16, 52).

Tr. 23. The ALJ's explanation of the supportability and consistency factors satisfies the minimal requirements of § 404.1520c(b)(2). Thus, the ALJ was justified as a matter of law in finding Dr. Smith's opinion persuasive, rendering Grennan's arguments to the contrary unpersuasive.

### 2. Substantial evidence does not support the ALJ's finding that Grennan's interstitial cystitis and related genitourinary symptoms are nonsevere.

Grennan argues "[t]he ALJ's finding that Plaintiff's bladder problems cause no work limitations is contrary to law and not supported by substantial evidence." ECF No. 20 at 10. The Commissioner sees things differently, countering that "[t]he ALJ properly found [Grennan's bladder problems] were 'not severe' as they did not cause any vocationally relevant limitations." ECF No. 21 at 24. Although the ALJ's finding was not "contrary to law," the undersigned agrees that substantial evidence does not support the finding. Step-two severity findings are frequently plagued by improper appeals to antiquated legal standards, but that is not the reason requiring reversal here. The ALJ did not offend *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) or its progeny by applying an improper step-two standard. Rather, she conducted the proper analysis, but reached a determination for Grennan's genitourinary symptoms that substantial evidence does not support.

#### a. The ALJ applied proper legal standards at step two.

In the Fifth Circuit, "[s]evere impairment has a specific—if somewhat surprising— meaning." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The meaning's specificity is important here: "Under our binding precedent, '[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Id.* at 817 (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)); *see also Stone*, 752 F.2d 1099. To show a severe impairment at step two, claimants must only make "a *de minimis* showing" that the impairment is "severe enough to interfere with" their ability to work. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992) (discussing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)).

Because step two's severity standard is relaxed, the Fifth Circuit adopted a presumption of improper legal standards in "cases where the disposition has been on the basis of nonseverity." *Stone*, 752 F.2d at 1106. To ensure ALJs appropriately applied the low "de minimis" standard at step two, *Stone* endorsed an approach where courts assume ALJs applied the wrong legal standard "unless the correct standard is set forth by references to [*Stone* or similar case law], or by an express statement." *Id.* The issue in this case does not arise under *Stone* for two reasons.

First, the Court has gradually moved away from an application of *Stone* that looks only to "the use of 'magic words,'" and now looks to the ALJ's entire analysis to determine whether they applied the proper severity standard. *Holmes v. Astrue*, No. 3:11-cv-2634-G (BH), 2013 WL 638830, at *9 (N.D. Tex. Jan. 25, 2013), *rec. adopted*, 2013 WL 646510, at *1 (N.D. Tex. Feb. 20, 2013); *see also McFarland v. Saul*, No. 4:18-cv-00711-O, 2019 WL 3927298, at *4 (N.D. Tex. Aug. 20, 2019) (citing *Hampton*, 785 F.2d at 1311). Second, *Stone* applies to "cases where the disposition has been on the basis of nonseverity." *Stone*, 752 F.2d at 1106. Here, the ALJ did not dispose of Grennan's entire claim at step two, *see* Tr. 14-25, making *Stone*'s presumption inapplicable. *See Donald M. v. Comm. of Soc. Sec.*, No. 4:18-cv-00711-O-BP, 2019 WL 5026507, at *4 (N.D. Tex. July 2, 2019), *rec. adopted sub nom. McFarland v. Saul*, 2019 WL 3927298, at *1 (N.D. Tex. Aug. 20, 2019); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987). While

11

the standard is not rendered irrelevant beyond step two, *Stone*'s wrong-standard presumption only applies where the ALJ disposes of an entire claim at that step. *Stone*, 752 F.2d at 1106; *see Donald M.*, 2019 WL 5026507, at *4 ("Thus, the undersigned concludes that although the ALJ did not apply the correct legal standard, this error is irrelevant because he proceeded past step two of the sequential evaluation.").

It became apparent post-*Stone* that unconstrained application of the *Stone* presumption invited claimants to misuse the presumption in challenging benefits denials entirely unrelated to step two. By narrowing the presumption's applicability to step two, the courts curbed use of *Stone* as a "get-out-of-jail-free" card. This was the case in *Stone v. Astrue*, where the claimant relied on *Stone* to invalidate a step-five not-disabled finding despite favorable step two findings: "Having thus found for plaintiff at the 'impairment or combination of impairments that is severe' step, plaintiff can hardly complain of the standard the ALJ used to arrive at that finding. He made precisely the finding plaintiff would have wanted him to make." No. 4:08-cv-598-A, 2010 WL 2164414, at *2 (N.D. Tex. May 27, 2010). To stop such misuse of *Stone*, the Court does not apply its presumption in cases where the ALJ proceeds beyond step two. *See Jones v. Astrue*, 821 F. Supp. 842, 850 (N.D. Tex. 2011) (reiterating that "a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step sequential analysis").

But constraint of the *Stone* presumption to step two does not affect the operative legal standard for step-two severity findings, which remains unchanged. At step two, claimants like Grennan need only make "a *de minimis* showing" that a particular impairment would "interfere with" their work. *Anthony*, 954 F.2d at 293 n.5 (discussing *Hampton*, 785 F.2d at 1311). The presence or absence of certain words in the ALJ's analysis is not the issue here. Instead, reversal

12

is necessary because Grennan carried her burden at step two as to her genitourinary symptoms, and the ALJ's conclusion that those symptoms are nonsevere lacks a basis in substantial evidence.

### b. Substantial evidence does not support the ALJ's step-two determination for Grennan's genitourinary symptoms.

Though not an exhaustive summary of Grennan's condition, the chronology from her brief (with the transcript citations included) aids the severe impairment analysis and demonstrates Grennan's struggle with urinary incontinence. *See* ECF No. 20 at 10-12. Such an ostensibly severe medical history accounted for, many social security appeals involve medical records that provide substantial evidence of both a severe impairment finding *and* a non-severe impairment finding. In such instances, "[c]onflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown*, 192 F.3d at 496 (alteration in original). Furthermore, the fact that references to Grennan's bladder conditions appear throughout her medical records says theoretically little of their severity: extrapolating a condition's severity from its numerical frequency in the record fallaciously conflates quantitative evidence for qualitative evidence.

Although a claimant's step-two burden is quite low, it remains exceedingly difficult to show substantial evidence does not support an ALJ's opinion, in whole or in part. Evidence is substantial if it "is more than a mere scintilla," but it need not be greater than a preponderance. *Boyd*, 239 F.3d at 704. It is the bare minimum needed for "a reasonable mind [to] accept to support a conclusion." *Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236). A finding of no substantial evidence is only appropriate where a reasonable mind could not support the ALJ's conclusion based on the evidence under consideration. The Court may not reweigh the evidence or substitute its judgment for the Commissioner's. *See Harris*, 209 F.3d at 417. But it must "carefully scrutinize" the record to ensure substantial evidence supports the ALJ's conclusion. *Hollis*, 837 F.2d at 1383. Based on a careful review of the evidence the ALJ relied upon in finding

that Grennan's urinary tract symptoms were non-severe, viewed in a manner "highly deferential" to the Commissioner, *see Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005), no reasonable mind could conclude the genitourinary symptoms associated with Grennan's interstitial cystitis, most pronounced in her urinary incontinence, are not a "severe impairment" as understood in the Fifth Circuit.

The evidence the ALJ relied upon to support her finding does not support a non-severe finding. The ALJ's record citations frequently argue from silence, noting that boilerplate medical intake forms did not mention Grennan's bladder problems at various points throughout the record. But as Grennan persuasively argues, the ALJ references irrelevant healthcare visits, such as Grennan's appointments with mental health professionals, rheumatologists, and trips to the ER for unrelated matters like abdominal pain. *See* ECF No. 20 at 13-14. The ALJ similarly cites irrelevant visits when stating "no such condition" was assessed. *See, e.g.*, Tr. 14 (discussing Exs. 7F/16-17; 11F/19). As Grennan again correctly observes, those were pain management visits relating to Grennan's fibromyalgia. *See* ECF No. 20 at 14. While the ALJ was not wrong to note "no such condition [was] assessed" in those visits, she fails to mention the medical records reflect no such test was performed. Thus, the absence of Grennan's bladder conditions from medical settings where those conditions would never be mentioned or professionally assessed does not and cannot support the ALJ's assertion that the conditions themselves were non-severe.

Moreover, a line-by-line assessment of the evidence the ALJ cites does not support the conclusion she reached. For instance, she cites every time the record reflects Grennan reported improvements in her condition, but omits every reference to Grennan changing medicines because prior medications stopped working. *See, e.g.*, Tr. 14, 1005, 1019, 1021; *see also* ECF No. 20 at 13 n.9. The ALJ cited isolated medical records where Grennan reported improvements under certain

14

medications and then gleaned from those isolated reports an overall conclusion that Grennan's genitourinary conditions were non-severe. However, the numerical frequency of medicine changes/non-improved symptomology in the record is exponentially greater than instances where Grennan reported marginal, temporary improvements. And the evidence upon which the ALJ relied is post-dated by more recent evidence supporting the opposite conclusion. *See* ECF No. 20 at 13-14 (providing a line-by-line discussion showing where evidence of the condition's severity post-dates evidence in the ALJ's explanation).

Considering the significant evidence Grennan's genitourinary conditions are severe, the ALJ's inapposite references to physicians' reports unrelated to Grennan's genitourinary symptomology, and the fact that evidence of the condition's severity postdates the few reports within the ALJ's explanation that suggest otherwise, the undersigned concludes substantial evidence does not support the ALJ's step-two conclusion. Although the line between impermissible reweighing of the evidence and permissible scrutiny of the evidentiary record is at times blurry, the undaunting threshold for substantial evidence means reversals for a lack thereof are usually self-evident. Because substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion," *Ripley*, 67 F.3d at 555, reviewing courts often take a "you-know-it-when-you-see-it" approach to decisions unsupported by substantial evidence. *See, e.g.*, *Loza*, 219 F.3d at 390-98 (examining a record similar to Grennan's where the overwhelming thrust of reports cut against the ALJ's conclusion and determining that "[t]he ALJ's finding is fundamentally at odds with the evidence"). A finding of no substantial evidence is unavoidable here because no reasonable mind could examine the medical evidence of record and conclude Grennan's bladder problems would have "such minimal effect on [her] that [they] would not be expected to interfere with [her] ability to work." *Stone*, 752 F.2d at 1101.

The Commissioner's brief relies heavily on evidence regarding a *disability finding*, not evidence regarding a step-two severe impairment finding. The Commissioner cites case law for the accurate proposition that "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that [she] is so functionally impaired by the impairment that [she] was precluded from engaging in any substantial gainful activity." ECF No. 21 at 23 (quoting *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (citations omitted)). But this relates to disability findings (at steps four and five), rather than severe impairment findings (at step two). Because the ALJ erred in concluding Grennan's bladder issues were not severe, she did not proceed to the disability analyses in subsequent steps for that condition.

The Commissioner cites accurate law with respect to the disability determination at later stages, *see, e.g.*, *Hames*, 707 F.2d at 165, and indeed Grennan may have an uphill battle proving her right to benefits at those steps on remand. But the law requires she be afforded a thoughtfully explained disability analysis at those later steps for a condition of this severity. *See Stone*, 752 F.2d at 1101-06; *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-07 (N.D. Tex. Jan. 27, 2009). The undersigned is mindful that "the Court will not overturn an ALJ's decision if "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). But when the ALJ found Grennan's genitourinary conditions nonsevere at step two without substantial evidence, Grennan was deprived of any further analysis as to her disability status with those conditions duly accounted for. Consequently, the ALJ's error necessarily impacted her substantial rights. Thus, the result from *Salmond* is befitting here: "We do not hold that [Grennan] is entitled to relief but only that the ALJ erred in finding for step two of the five-step approach that [her] impairment[ was] not severe." 892 F.3d at 819. And just as the Court did in that case, Judge O'Connor should reverse the Commissioner's decision here and remand this case for further

administrative proceedings consistent with a step-two finding that Grennan's genitourinary conditions are severe.

## IV. CONCLUSION

Substantial evidence does not support the Commissioner's finding that Grennan's interstitial cystitis and related genitourinary conditions are nonsevere. Because the ALJ made a non-severe finding at step two, Grennan did not receive a full analysis of that impairment's potentially disabling effects. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for additional proceedings consistent with a step-two determination that Grennan's interstitial cystitis and related genitourinary symptoms are a severe impairment.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 23, 2022.

                                                    _____
                                                    Hal R. Ray, Jr.
                                                    UNITED STATES MAGISTRATE JUDGE